IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FAIR HOUSING RIGHTS CENTER IN | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 16-4677 |
| MORGAN PROPERTIES MANAGEMENT | : | |
| COMPANY, LLC, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                              **APRIL  11 , 2017**

Presently before the Court is Defendants' Motion for Judgment on the Pleadings.  (ECF No. 22.)  For the following reasons, the Motion will be denied.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff's Amended Complaint alleges that Defendants[1] unlawfully discriminated against tenants with disabilities and discouraged persons with disabilities from applying to live in Defendants' apartments.  (Am. Compl. ¶ 9, ECF No. 2.)  Plaintiff Fair Housing Rights Center in Southeastern Pennsylvania ("FHRC") is a non-profit agency that works to ensure that persons with disabilities are provided equal access to housing opportunities.  (*Id.* ¶ 13.)

In 2012, Plaintiff received a complaint from a disabled person ("the complainant") who lived at Brookside Manor.  This is a property owned by KBF and operated by Morgan.  (*Id.* ¶ 25.)  The complainant was unable to work because of his disability, and therefore relied on Social Security Disability Insurance (SSDI) in order to pay his rent.  (*Id.*)  Defendants required the complainant to pay rent on the first day of every month; however, the complainant did not

---

[1] Defendants include Morgan Properties Management Company, LLC ("Morgan"), KBF Associates, L.P. ("KBF"), and Montgomery Woods Owner, LLC ("Montgomery").

receive his social security check until after the rent was due.  (*Id*.)  The complainant requested for KBF and Morgan to change his rental due date so that it was after he received his SSDI check.  (*Id*.)  Plaintiff alleges that KBF and Morgan denied his request, and instead charged him late fees and refused to renew the complainant's lease.  (*Id*.)

After receiving this complaint, Plaintiff launched an investigation into the potential disability discrimination occurring at Defendants' other properties.  (*Id*. ¶ 26.)  Plaintiff investigated three buildings in the Philadelphia area:  Brookside Manor Apartments and Townhomes, Kingswood Apartments, and Montgomery Woods Townhomes.  (*Id*. ¶ 27.)  As part of its investigation, Plaintiff engaged three different "testers" to contact the respective buildings and to inquire about Defendants' policies for adjusting monthly rental due dates for SSDI recipients.  (*Id*.)  Plaintiff alleges that SSDI recipients who began receiving benefits after 1997 receive their benefits check on either the second, third, or fourth Wednesday of the month.  (*Id*. ¶ 4.)

On June 29, 2012, tester one ("T1") called Brookside Manor Apartments and Townhomes posing as a person inquiring about housing opportunities for her sister.  (*Id*. ¶ 28.)  T1 told one of the Brookside employees that her sister had a disability and received SSDI checks on the 15th of each month.  (*Id*. ¶ 29.)  T1 asked the employee if her sister could be permitted to pay the rent when she receives her SSDI check, on the 15th of each month.  (*Id*.)  Plaintiff alleges that the employee told TI that company policy is that the rent is always due on the first of the month and "that there were no exceptions to this rule."  (*Id*. ¶ 30.)  The employee also said that if a tenant paid rent on the 15th of the month, Morgan and KBF would have already begun court proceedings against the tenant.  (*Id*. ¶ 31.)  According to the employee, a tenant would therefore have to pay late fees and court fees.  (*Id*.)

On July 17, 2012, tester two ("T2") called Kingswood Apartments. (*Id*. ¶ 32.) Like TI, T2 stated that she was calling on behalf of her sister, who received SSDI payments on the 15th of each month because of her disability. (*Id*. ¶ 33.) T2 told the employee that the SSDI checks were her sister's sole source of income. (*Id*.) T2 then asked if Kingswood Apartments could be flexible with the rental due date for her disabled sister. (*Id*. ¶ 34.) The employee told T2 to check with the local Kingswood offices. (*Id*.) T2 then called the local Kingswood office and was told that the rent is due on the first day of each month and that there was a five-day grace period. (*Id*. ¶ 36.) After asking if any accommodation could be made for her sister, another Kingswood employee told T2 that the renter would be required to pay rent one month in advance in order to avoid late fees. (*Id*. ¶ 38.)

On June 19, 2013, tester three ("T3") made an appointment to view one of the Montgomery Woods Townhomes. (*Id*. ¶ 39.) Like T1 and T2, T3 told the employee that her sister was disabled and received SSDI benefits on the 15th of each month. T3 asked if the rental due date could be the 15th of the month instead of the 1st of the month. (*Id*. ¶ 43.) The employee told T3 that she did not think it was possible to adjust the rental due date, but told T3 that she would check with her boss. (*Id*. ¶ 44.) On June 25, T3 called the employee to follow-up, and was told that Montgomery would not adjust the due date. (*Id*. ¶ 45.)

### B. Procedural History

On August 21, 2013, Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD") against Defendants for violations of the Fair Housing Act and the Pennsylvania Human Relations Act. (*Id*. ¶ 53.) HUD accepted the complaint and referred it to the Pennsylvania Human Relations Commission ("PHRC"). (*Id*. ¶¶ 53-54.) On

September 29, 2015, the PHRC found that probable cause existed that Morgan engaged in unlawful discrimination.  (*Id*. ¶ 54.)  The PHRC has not resolved Plaintiff's complaint.  (*Id*.)

On August 29, 2016, Plaintiff filed a Complaint in this Court.  (ECF No. 1.)  On September 1, 2016, Plaintiff filed an Amended Complaint.  Plaintiff's Amended Complaint alleges that Defendants have engaged in discriminatory actions and refused to make reasonable housing accommodations to persons with disabilities.  (Am. Compl. ¶¶ 65, 69.)  Plaintiff alleges that Defendants' acts deny people with disabilities an equal opportunity to use and enjoy a dwelling.  (*Id*.)  Plaintiff alleges that Defendants' discriminatory actions are violations of the Fair Housing Act, 42 U.S.C. §3604(f) ("FHA") (Count I) and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 955(h)(3.2) ("PHRA") (Count II).  (*Id*. ¶¶ 66, 69.)  Defendant Morgan filed an Answer to Plaintiff's Amended Complaint on October 28, 2016.  (ECF No. 8.)  On October 31, 2016, all Defendants filed an Amended Answer with affirmative defenses.  (ECF No. 9.)  On December 29, 2016, Defendants filed the instant Motion for Judgment on the Pleadings.  (Defs.' Mot., ECF No. 22; Defs.' Br., ECF No. 23.)  On January 17, 2017, Plaintiff filed a Response to Defendants' Motion.  (Pl.'s Resp., ECF No. 27.)  Defendants' request for oral argument on the Motion was granted and argument was held on March 30, 2017.  (ECF No. 34.)

## II.    LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Courts evaluate a Rule 12(c) motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6).  *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).  A motion for judgment on the pleadings will be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law."

*Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)); *see also Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) ("[A Rule 12(c) motion] only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain." (citations and internal quotation marks omitted)).

In evaluating a Rule 12(c) motion, the Court must "accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008). The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *See, e.g.*, *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## III.  DISCUSSION

Plaintiff alleges that Defendants discriminated against disabled people by making housing unavailable to SSDI recipients, and by refusing to make reasonable accommodations necessary to afford disabled people an equal opportunity to use and enjoy Defendants' properties.[2]

---

[2] We analyze Plaintiff's PHRA claim under the same standard as its FHA claim. The PHRA is to be interpreted "as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fasold v. Justice*, 409 F.3d 178, 184 n.8 (3d Cir. 2005) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)). The relevant PHRA sections state that it is unlawful (1) "for any person to [r]efuse to sell, lease, finance or otherwise to deny or withhold any housing accommodation or commercial property from any person because of the . . . disability of any person, prospective owner, occupant or user of such housing accommodation . . . ." and (2) to "[r]efuse to make reasonable accommodations in rules, policies, practices or services when such

## A.  Otherwise Make Unavailable

Plaintiff argues that Defendants' inflexible policy, which requires all tenants to pay rent on the first day of the month, has the effect of making housing unavailable to people with disabilities.  Section 3604(f)(1) of the FHA provides that it is unlawful:

> To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
> (A) that buyer or renter,
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1).  Congress has expanded upon the "otherwise make unavailable" requirement, "recogniz[ing] that 'another method of making housing unavailable to people with disabilities has been the application or enforcement of otherwise neutral rules and regulations . . . which discriminates against people with disabilities.'"  *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1417 (9th Cir. 1994) (quoting H.R. REP. No. 100-711, at 24 (1988)).  The Supreme Court has stated that the FHA has a "'broad and inclusive' compass, and therefore accord[s] a 'generous construction' to the Act's complaint-filing provision."  *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (quoting *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972)); *see also McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004) ("The threshold for pleading discrimination claims under the FHAA

accommodations may be necessary to afford such person equal opportunity to use and enjoy a housing accommodation."  43 Pa. Stat. Ann. § 955 (h)(1).
  The relevant PHRA provisions do not contain language that requires this Court to analyze it separately from the FHA claim.  *See, e.g.*, *Brillhart v. Sharp*, No. 07-1121, 2008 WL 2857713, at *8 n.5 (M.D. Pa. July 21, 2008) ("Because the PHRA provisions at issue contain no such language [to cause it to be treated differently], the Court will analyze the plaintiff's FHA and PHRA claims under the same standards and caselaw."); *Sipio v. Twp. of Springfield*, No. 94-6180, 1996 WL 479670, at *2 n.6 (E.D. Pa. Aug. 20, 1996) (analyzing the plaintiff's PHRA discrimination claims under the same standard as the FHA because "the relevant provisions of the PHRA mirror those of the FHA").

is low.").  The Third Circuit, citing to the House Judiciary Committee, has recognized that "the Fair Housing Amendments Act . . . is a clear pronouncement of a national commitment to *end the unnecessary exclusion of persons with handicaps* from the American mainstream."  *Helen L. v. DiDario*, 46 F.3d 325, 333 n.14 (3d Cir. 1995) (emphasis in original) (citation omitted).

Plaintiff  alleges that Defendants' refusal to provide a flexible rental due date for SSDI recipients makes it more difficult for disabled people to obtain housing on Defendants' properties, and discourages disabled people from applying to live in Defendants' properties. Plaintiff contends that many SSDI recipients rely either exclusively or heavily on SSDI checks to pay their rent, and therefore are unable to make timely payments if rent is due before they receive their SSDI check.  Since Defendants' rent is due on the first of the month, and failure to make timely rent payments results in severe financial consequences, Plaintiff argues that Defendants' policy essentially makes housing unavailable to disabled people.

The Fourth Circuit has noted that discrimination which "otherwise make[s] housing unavailable" to disabled persons can take many forms.  *Corey v. Sec'y, U.S. Dep't of Hous. & Urban Dev. ex rel. Walker*, 719 F.3d 322, 327 (4th Cir. 2013) ("This admission alone supports the FHA violations:  by imposing more burdensome application procedures and generally discouraging the [disabled person's] application, [the defendant] otherwise made the property unavailable to the [the disabled people] because of a disability, in violation of § 3604(f)(1) . . . ."); *see also Mobile Home*, 29 F.3d at 1417 (finding that the FHA is concerned with "facially neutral rules of all types"); *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997) ("To establish a prima facie disparate impact case, a plaintiff must establish at least that the defendant's actions had a discriminatory effect.") (citation and internal quotation marks omitted); *Smith v. Anchor Bldg. Corp.*, 536 F.2d 231, 233 (8th Cir. 1976) ("Effect, not motivation, is the

touchstone because a thoughtless housing practice can be as unfair to minority rights as a willful scheme."). The Fourth Circuit cites *United States v. Youritan Constr. Co.*, 370 F. Supp. 643, 648 (N.D. Cal. 1973), which held that the "otherwise make unavailable" language in the FHA included "the imposition of more burdensome application procedures, of delaying tactics, and of various forms of discouragement by resident managers and rental agents." *Corey*, 719 F.3d at 326 (quoting *Youritan*, 370 F. Supp. at 648); *see also L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 399 (S.D.N.Y. 2013). The Third Circuit has also held that a plaintiff can establish a prima facie case of disparate impact under the FHA by showing that the protected individuals "are disproportionately burdened" by the defendant's actions and policies, and that the defendant's actions and policies "fall[] more harshly" on the protected group. *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 383 (3d Cir. 2011) (citation omitted).

Here, Plaintiff has alleged that SSDI recipients rely on benefit checks to support themselves, and that these checks can arrive on the second, third, or fourth Wednesday of the month. Defendants have a policy that requires that rental payments are due on the first of the month. Defendants' policy states that if a tenant does not pay rent on the first of the month, he/she will be charged with a late fee. (Stip. ¶ 5, ECF No. 21.) Defendants maintain a policy that never allows tenants to receive permanent or indefinite adjustments for rental due dates. (*Id.* ¶ 6.) Since many SSDI recipients rely almost exclusively on their SSDI check for financial support, Defendants' strict rental policy makes it burdensome for SSDI recipients to reside in Defendants' properties without incurring late fees and court costs. Clearly, Defendants' current policy may well deter disabled persons from residing in Defendants' rental units. Plaintiff has stated a discrimination claim pursuant to 42 U.S.C. § 3604(f)(1)(A).[3]

---

[3] Plaintiff also brings a disparate treatment claim under the FHA. Plaintiff argues that because Defendants grant temporary exceptions to their rental due-date policy for some tenants

## B. Reasonable Accommodation

Plaintiff alleges that Defendants refused to make reasonable accommodations to their rental policy, in violation of the FHA. Section 3604(f)(3)(B) of the FHA provides that unlawful discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Plaintiff argues that Defendants failed to make reasonable accommodations by refusing to provide exceptions to its rental policy.

The Third Circuit has held that the reasonable accommodation provision "require[s] that changes be made to traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling." *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1105 (3d Cir. 1996) (citation omitted). Congress enacted the reasonable accommodation

---

(Stip. ¶ 6), and yet refused to make any exceptions to SSDI recipients, they discriminate against persons with disabilities.

"Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005); *see also Cmty. Hous. Trust v. Dep't of Consumer & Regulatory Affairs*, 257 F. Supp. 2d 208, 225 (D.D.C. 2003) ("It is well settled that a defendant's decision or action constitutes disparate treatment, or intentional discrimination, when a person's disability was a 'motivating factor' behind the challenged action or decision."). However, "[t]he discriminatory purpose need not be malicious or invidious, nor need it figure in solely, primarily, or even predominantly into the motivation behind the challenged action." *Wind Gap*, 421 F.3d at 177 (citation and internal quotation marks omitted).

Plaintiff pleads no facts which demonstrate that Defendants' rental policy was motivated by some discriminatory purpose. Rather, both parties stipulated that Defendants have a policy to never provide permanent or indefinite rental adjustments. (Stip. ¶ 2.) Plaintiff argues that since Defendants deliberately chose not to provide rental due date exceptions to the testers, and yet provides exceptions to non-disabled people, Plaintiff has stated a plausible claim of discrimination. We disagree. While Defendants did stipulate that they provide "temporary adjustments" to those tenants who experience "short-term periods of unexpected financial hardship," this has nothing to do with the tester's request to have a *permanent* adjustment to the rental due date, which is neither short-term nor unexpected. (*Id.* ¶ 6.) Accordingly, we find Plaintiff's argument unconvincing and insufficient to state a claim of disparate treatment against Defendants.

provision to overcome "strict adherence to a rule which has the effect of precluding handicapped individuals from residing in the residence of their choice . . . ." *Id.* at 1106 (citations omitted); *see also* H.R. REP. No. 100-711, at 25 (1988) (stating that "changes [must] be made to such traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling"). The Third Circuit has also noted that "[t]he reasonable accommodation inquiry is highly fact-specific, requiring a case-by-case determination." *Hovsons*, 89 F.3d at 1104 (citing *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994)).

Plaintiff argues that Defendants' "blanket policy," which requires all SSDI recipients to pay their rent on the first day of the month, is an "inflexible and unyielding" policy that is not permitted under the reasonable accommodations provision of the FHA. (Pl.'s Resp. 1.) Plaintiff argues that Defendants must adopt a flexible rental due date policy for SSDI recipients because many recipients are unable to work because they are disabled, and thus rely on SSDI checks as their sole or main source of income. Defendants argue that the requested accommodation is not required under the FHA for the following reasons: (1) the requested accommodation that Plaintiff requests is purely economic in nature; (2) the requested accommodation would provide preferential treatment to disabled persons; (3) the requested accommodation would place a substantial and unreasonable burden on Defendants; and (4) Defendants already have an existing alternative accommodation for disabled persons. We consider each of Defendants' arguments.

### 1. Financial Considerations

Defendants argue that they are not required to grant Plaintiff's requested accommodation because the requested accommodation solely addresses a disabled person's financial circumstances. Defendant asserts that courts have "made it overwhelmingly clear" that the FHA

does not require a housing entity to provide accommodations for financial reasons. (Defs.' Br. 9.) We are satisfied that courts have held that the FHA does permit consideration of a disabled person's financial circumstances in determining whether reasonable accommodation is required.

In *Giebeler v. M & B Associates*, 343 F.3d 1143, 1155 (9th Cir. 2003), the Ninth Circuit specifically held that it is appropriate to consider a disabled person's financial circumstances when determining appropriate reasonable accommodations. In *Giebeler*, the plaintiff was disabled and received SSDI benefits because of his inability to work. *Id*. at 1145. Unable to pay for rent on his own, the plaintiff and the plaintiff's mother filled out an application to rent an apartment from the defendant. *Id*. The defendant had a policy against permitting cosigners on lease agreements, and therefore rejected the plaintiff's mother's application because it qualified her as a cosigner. *Id*. The plaintiff requested an accommodation because he was disabled and unable to support himself. *Id*. The defendant cited its policy and denied the accommodation. *Id*. Like Defendants here, the defendant in *Giebeler* argued that permitting such an accommodation for the plaintiff would: (1) show preferential treatment to disabled persons, (2) accommodate the plaintiff's poverty and financial situation, and (3) create unreasonable financial exposure for the defendant. *Id*. The Ninth Circuit rejected these arguments as "run[ing] afoul of binding case law elucidating the 'accommodation' concept in the FHAA . . . ." *Id*. at 1148. The court held that an accommodation was required because an "[i]mposition of burdensome policies, *including financial policies*, can interfere with disabled persons' right to use and enjoyment of their dwellings . . . ." *Id*. at 1155 (emphasis added). The *Giebeler* court joined other circuits in recognizing that "exceptions to neutral policies may be mandated by the FHAA where disabled persons' disability-linked needs for alterations to the policies are essentially financial in nature."

*Id.* at 1152 n.6 (citing *Smith & Lee Assocs. v. City of Taylor*, 102 F.3d 781, 795-96 (6th Cir. 1996); *Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175, 179 (5th Cir. 1996)).

The Seventh Circuit similarly considered the types of financial restrictions disabled persons may face when considering a plaintiff's FHA claim. *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775 (7th Cir. 2002). The court in *Oconomowoc* held that reasonable accommodations were necessary because the disabled people in the case could not afford to purchase a home on their own. *Id.* at 787. The court ultimately determined that, pursuant to the FHA, accommodations were needed to provide the disabled persons an equal opportunity to use and enjoy a dwelling. *Id.*; *see also McGary*, 386 F.3d at 1263 (holding that the defendant is required to consider a disabled person's financial circumstances, which arise from his inability to work); *Mobile Home*, 29 F.3d at 1418 (holding that "a landlord's refusal to waive generally applicable fees may, under some circumstances, constitute discrimination on the basis of handicap"); *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 803-06 (9th Cir. 1994) (holding that the FHA required a variance from the zoning ordinance in order for disabled people with limited income to have an equal opportunity to secure housing).

Considering existing circuit court authority regarding accommodations for a disabled person's financial circumstances, we conclude that the FHA may require accommodations for an SSDI recipient's financial circumstances. Here, Plaintiff has alleged that SSDI recipients rely on SSDI checks as their primary or sole source of income because their disabilities render them unable to work. Further, Plaintiff has alleged that the average SSDI check is $1,166 per month. (Am. Compl. ¶ 20.) Defendants' rental properties range between $805 and $1,410 per month for either a studio or one-bedroom apartment. (*Id.* ¶¶ 3, 33, 41.) If a tenant does not pay the rent on time, Defendants charge the tenant a ten percent late fee, averaging about $120 per month. (*Id.* ¶

3.)  Since many SSDI recipients rely exclusively on SSDI checks as their source of income, it is not feasible for them to make rental payments until they receive their disability benefits.  Since SSDI checks arrive on the second, third, or fourth Wednesday of the month, the SSDI recipient would have to pay a late fee every month.  Clearly, it is reasonable that Defendants be required to adjust their rental due date in order for disabled persons to be afforded equal housing opportunities.

## 2.   *Preferential Treatment*

Defendants argue that providing SSDI recipients with a flexible rental due date would afford them preferential treatment over non-disabled tenants who could also be struggling financially.  Plaintiff responds that persons with disabilities can and should be given preferential treatment to the extent that it provides them with an equal opportunity to obtain housing.

In the case of *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002), the Supreme Court held that "preferences in the form of reasonable accommodations [] are needed for those with disabilities to obtain the same [] opportunities that those without disabilities automatically enjoy."[4] (emphasis omitted); *see also Giebeler*, 343 F.3d at 1150 (holding that preferential treatment towards disabled persons does not run afoul of the FHA).  The Supreme Court emphasized that any type of "special accommodation" would require that the person with a disability to be treated differently, "*i.e.*, preferentially."  *Barnett*, 535 U.S. at 397.  "The simple

---

[4] The statute under consideration in *Barnett* was the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA").  535 U.S. at 393.  However, the ADA and FHA have the same requirements for pleading a reasonable accommodation claim.  *Oconomowoc*, 300 F.3d at 783; *see also Hovsons*, 89 F.3d at 1103 (noting that "courts must look to the body of law developed under § 504 of the Rehabilitation Act as an interpretive guide to the reasonable accommodation provision of the FHAA"); *c.f.*, *Frederick L. v. Dep't of Pub. Welfare of Com. of Pa.*, 364 F.3d 487, 490 n.2 (3d Cir. 2004) ("The language and implementing regulations of the ADA and the RA are virtually the same . . . ."); *Giebeler*, 343 F.3d at 1149 (applying ADA interpretations of "accommodation" when interpreting FHA accommodation provisions).

fact that an accommodation would provide a 'preference'—in the sense that it would permit the [disabled person] to violate a rule that others must obey—cannot, *in and of itself*, automatically show that the accommodation is not 'reasonable.'" *Id.* at 398 (emphasis in original).

Defendants argue that many low-income individuals also live paycheck to paycheck, and, similar to disabled persons, may be unable to pay rent on the first day of the month. Further, Defendants argue that—similar to SSDI recipients—working individuals get paid at various times during the month, and are nevertheless expected to make timely rental payments.

We appreciate that many prospective tenants may be struggling financially, and that many working individuals may not be paid until the third or fourth week of the month; however, that does not negate Plaintiff's argument that Defendants' policy denies disabled people an equal opportunity to obtain housing. Many disabled individuals are unable to work because of their disability. Therefore, they are not afforded the opportunity to earn a steady income, and may be entirely dependent on SSDI checks for financial support. As the Supreme Court instructed in *Barnett*, courts must grant preferences to disabled persons to the extent that they are needed to provide them with the same opportunities as non-disabled people. Even though granting SSDI recipients more time to pay their rent may provide them with preferential treatment, such accommodation may be necessary because a disabled person may have to wait until she receives her SSDI check to afford housing. Therefore, the mere fact that non-disabled persons may also be struggling financially does not necessarily make the accommodation unreasonable or impermissible. An SSDI recipient may need to be afforded preferential treatment in order to provide them with an equal opportunity to obtain housing.

### 3. Unreasonable Burden

Defendants argue that adjusting the rental due date for SSDI recipients would create an unreasonable and substantial burden on Defendants. The Third Circuit has held that in order for a defendant to establish that an accommodation is not reasonable, a defendant is "required to prove that it could not have granted the variance without imposing undue financial and administrative burdens, imposing an undue hardship upon the [defendant], or requiring a fundamental alteration in the nature of the program." *Hovsons*, 89 F.3d 1096 at 1104 (internal quotation marks and citations omitted). The Third Circuit has also emphasized "the principle that satisfaction of the FHAA's reasonable accommodation requirement 'can and often will involve some costs.'" *Id*. (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 335 (2d Cir. 1995)).

Defendants cite a number of reasons as to why the requested accommodation is unreasonably burdensome. Defendants argue that the requested accommodation would "fundamentally alter the way" they do business, and would require a "major and expensive reprogramming of software" and business procedures. (Defs.' Br. 14.) Defendants point out that Defendant Morgan "manages over 35,000 rental apartments in approximately 140 apartment communities in 10 states." (Stip. ¶ 1.) Defendants contend that their current system of rent collection and handling court proceedings is cost efficient, and that the requested accommodation would force a fundamental alteration to the way they conduct business. Defendants argue that this fundamental alteration would, in turn, create an undue financial and administrative burden. In addition to fundamentally changing its rent-collection policies, Defendants argue that the requested accommodation would affect their ability to obtain and pay their loans, and cover their base operating expenses. Defendants contend that they would be

forced to wait until potentially the third or fourth week of the month in order to be paid for services rendered weeks before, thus adversely effecting Defendants' financial health.

Defendants raise serious arguments. We understand that Defendants manage and own a vast number of properties across the country, and we appreciate the coordination that must go on in order for large companies to run in a cost-efficient manner. However, we also must consider that we are presently at the pleadings stage, and neither party has had the opportunity to engage in discovery. Determining whether an accommodation creates an undue financial and administrative burden is "highly fact-specific, requiring a case-by-case determination." *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 462 (3d Cir. 2002) (citation omitted); *see also Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016) ("The reasonableness issue here cannot be determined on the pleadings because the relevant factors are numerous and balancing them requires a full evidentiary record."); *Tuck v. HCA Health Servs. of Tennessee, Inc.*, 7 F.3d 465, 471 (6th Cir. 1993) ("Issues involving . . . reasonable accommodation are primarily factual issues.") (citation omitted).

In *California Mobile Home Park*, the Ninth Circuit emphasized that courts must conduct a fact-specific inquiry when ruling on a motion to dismiss. 29 F.3d at 1418. Reversing the district court, the court stressed that courts must examine a number of factors before deciding that an accommodation presents a substantial burden. *Id.* ("[A] reviewing court should examine, among other things, the amount of fees imposed, the relationship between the amount of fees and the overall housing cost, the proportion of other tenants paying such fees, the importance of the fees to the landlord's overall revenues, and the importance of the fee waiver to the handicapped tenant."). The court held it was clear that "the factual inquiry was prematurely terminated" since a reviewing court could not thoroughly examine the necessary factors given the lack of

information.  *Id*.  The court highlighted the fact that "[f]inal judgment was granted solely on the pleadings:  no evidence or testimony was heard on defendants' motion to dismiss and no discovery had yet been conducted" and ultimately reversed the lower court's dismissal of the plaintiff's claim.  *Id*.

Similarly, Defendants here have presented no evidence to support their contention that the requested accommodation is unduly burdensome.  Although it has been stipulated that Defendants manage over 35,000 rental properties,  Defendants have not plead any specifics to demonstrate exactly how they collect rent, how their rental systems operate, or how their operating costs would be affected by granting the requested accommodation.  We are required to consider a number of factors before determining that a requested accommodation is unduly burdensome.  We simply do not have enough information at this juncture to make such a determination.  Since we must view all facts in the light most favorable to Plaintiff, we cannot now find that Defendants will be unreasonably burdened by the requested accommodation.

### 4.    *Existing Alternative*

Defendants argue that the requested accommodation is unnecessary because Defendants already provide a reasonable alternative for disabled persons who are unable to pay their rent before they receive their SSDI check.  Defendants require tenants to pay their first month's rent prior to moving into the unit.  Defendants maintain that because tenants are required to pay their first month's rent and security deposit in advance, SSDI recipients can then use the checks they receive the first month that they are living in the unit to pay the following month's rent.  Defendants argue that under this system, no matter which week an SSDI recipient is paid, they will have the funds necessary to pay rent the following month.  Defendants argue that Plaintiff's requested accommodation simply addresses a disabled person's "lack of budgeting skills or

financial hardship common to all low-income individuals." (Defs.' Br. 20.) Plaintiff argues that Defendants' purported alternative accommodation is solely a defense to a request for an individual accommodation, and does not address Defendants' blanket policy, which denies rent adjustments for all disabled persons.

While Defendant's proposed solution may ultimately be proven to provide equal housing opportunities to all disabled persons, we cannot reach this conclusion at the pleadings stage. Plaintiff has asserted that many SSDI recipients exclusively rely on SSDI benefits as their source of income, and contends that holding any money in reserve is simply not an option for many disabled people.

Plaintiff has adequately pled facts sufficient to establish that Defendants' blanket policy plausibly denies disabled people an equal opportunity to obtain housing. Defendants' assertion that disabled people should hold their first month rent in reserve may address the issue for some SSDI recipients, however we are unable to make a determination now. There is currently no evidence in the record that would suggest that Defendants' requirement that tenants pay their rent a month in advance would in fact provide equal housing to *all* SSDI recipients. Rather, it is plausible that Defendants' suggested accommodation would not alleviate an SSDI recipient's financial hardship because some SSDI individuals may not be able to hold money in reserve. Since there is a possibility that some SSDI recipients would nevertheless be unable to pay their rent on time because of their heavy reliance on SSDI benefits for expenses other than rent, such as food, clothing, medical expenses, etc., it is possible that Defendants may need to provide the requested accommodation. Accordingly, dismissing Plaintiff's claims prior to discovery is inappropriate.

## C.     Standing

Defendants argue that Plaintiff does not have standing to file its Complaint against Defendants because Plaintiff's Complaint has not identified an injured party.  Defendants argue that a party must be disabled in order to seek an accommodation, and since no disabled person is a party to the present lawsuit, Plaintiff does not have standing.  Plaintiff argues that it has standing to sue because Defendants' actions impaired the Plaintiff's ability to provide services to further its fair housing mission, and because Plaintiff has invested resources to investigate Defendants' actions.

The Supreme Court has held that an organization has standing to sue if the organization can plead a "concrete and demonstrable injury to the organization's activities." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  In *Havens*, the Supreme Court ruled that an organization has standing if it claims that it "had to devote significant resources to identify and counteract the defendant's . . . discriminatory [] practices." *Id.*  The Third Circuit has similarly held that an organization satisfies the standing requirements if a defendant's alleged discriminatory practices have impaired the organization's ability to carry out its mission. *Fair Hous. Rights Ctr. in Se. Pa. v. Post Goldtex GP, LLC*, 823 F.3d 209, 214 (3d Cir. 2016); *see also Alexander v. Riga*, 208 F.3d 419, 427 n.4 (3d Cir. 2000) (holding that a fair housing organization qualifies as an "aggrieved person" and has standing to sue if the discriminatory acts impaired the organization's ability to carry out its mission" by "divert[ing] resources to investigate and to counter [the defendant's] conduct").

In *Goldtex*, the Third Circuit held that Plaintiff (also FHRC of Southeastern Pennsylvania), had standing because Plaintiff's "mission to eradicate housing discrimination ha[d] been frustrated because it [] had to divert resources in order to investigate and prosecute

the alleged discriminatory practices . . . ." 823 F.3d at 214 n.5. Plaintiff's complaint in *Goldtex* asserts the following with regard to the organization's injuries: "As a result of [the defendants'] actions and omissions, Plaintiff FHRC has been directly and substantially injured. FHRC has had to invest resources to investigate [the defendants'] violations of the FHA, diverting its resources from other activities that FHRC could have undertaken. Moreover, FHRC's mission to eradicate housing discrimination and assure equal access to housing for all people, including people with disabilities, has been frustrated." *Goldtex*, No. 14-4441, at ECF No. 1(filed July 25, 2014).

Plaintiff's complaint in *Goldtex* is very similar to the instant Complaint. Here, Plaintiff received a complaint from a disabled person living at Brookside Manor. (Am. Compl. ¶ 25.) The complainant had requested an accommodation from Defendants KBF and Morgan to change his rental due date and was charged late fees for late payments. (*Id*.) After receiving this complaint, Plaintiff started an investigation to determine if Defendants were discriminating against disabled persons. (*Id*. ¶ 26.) As part of this investigation, Plaintiff alleges that it had to "gather[] and research[] facts and applicable rules and regulations; design[], conduct[], and analyz[e] the tests . . . and engag[e] in outreach to the community, including the distribution of educational materials to tenants at the three communities tested by the FHRC . . . ." (*Id*. ¶ 59.) Like its complaint in *Goldtex*, Plaintiff alleges here that the FHRC was forced to conduct an extensive investigation of Defendants' discriminatory actions, and that the FHRC had to divert significant resources in order to prevent discrimination. The injuries alleged in Plaintiff's Complaint are sufficient to establish standing.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings will be

denied.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**